Brockenbrough, J.
delivered the opinion of the court. We have rarely met with any law more difficult to understand, and which has given rise to a greater diversity of opinion, than the short section on which this case, and with it the life of the prisoner, depends. The counsel who have argued it, have each given a very lucid view of his own construction; and the court, on the most serious consideration, have come to a conclusion different from that of either of them.
What is the meaning of the first clause of the section in question ? Free negroes and mulattoes “ shall be punished in the same manner as slaves.” Does it mean, that the free negro shall he punished to the same extent—to the same degree—that the slave is punished ? Heretofore, by former laws, plainly written, the slave guilty of horse stealing, was punished with death without benefit of clergy; the free negro, by imprisonment in the public jail and penitentiary house. The same difference exists as to burglary, robbery, forgery, and a long list of crimes. We do not think it con *654 sistent with the settled rules of interpretation applicable to penal statutes, and, particularly, to statutes on the subjects of capital felonies, to construe this statute as abolishing former laws, and substituting death as the punishment instead of imprisonment, by the mere declaration, that the manner of punishment of the free negro shall be the same as the manner of punishment of the slave. Penal statutes must be construed strictly; and we should, in all such cases, bear in mind the precedent set in the construction of a statute of George II. by the courts in England. By that law the stealing of sheep, or other cattle, was made felony without benefit of clergy. But the general words “ or other cattle” being looked upon as much too loose to create a capital of-fence, the statute was held to extend to nothing but the stealing of sheep.' And, in this case, we are of opinion, that to understand the word manner as meaning extent or degree, would be not to construe the statute strictly, but to give it a forced construction, by which the severity of the punishment would be much increased. If the legislature intended to declare, that, in all cases of felony, the punishment of free negroes shall be the same hereafter as has been heretofore inflicted on slaves, for the same felonies, it would probably have used words appropriate to that idea, it would not have said, that the manner of puuishment, but that the punishment itself, shall be the same. It might be proper to depart from the letter of a penal statute, where such a departure would be favorable to life or liberty, but never where it takes them away.
Let us, then, endeavour to understand the provisions of this statute. Heretofore, courts of oyer and terminer consisting of justices of the county and corporation courts, have had jurisdiction in case of slaves charged with crimes. They are authorized to try slaves, without the intervention of a jury, and after having found them guilty, they are required to render judgement, and pass sentence on them. But free negroes have not been heretofore tried, and punished, in that manner. They have been tried by a jury before the *655 circuit courts, and have been sentenced by those courts. The law annexes the penalty on conviction; that is, it dedares the quantum or degree of punishment attached to each criminal act, which the court after the conviction, merely pronounces. This statute of March 1832, enacts that hereafter free negroes and mulattoes shall not be tried and punished in that manner, but they shall be tried by justices of oyer and terminer, who after convicting shall proceed to punish them; that is, they shall proceed to pronounce the penalty which the law affixes to their crime. Such is the manner in which slaves have been heretofore tried, convicted and punished, and free negroes and mulattoes shall hereafter be tried, convicted and punished in the same manner; namely, by courts of oyer and terminer. This is the rule as to felonies generally, but there is an exception in the section,—“ that in cases of homicide, and in cases where the punishment shall be death,” they shall not be tried in that mode or manner, but shall be tried as heretofore : that is, in the accustomed mode, by juries, before the circuit courts. It is the manner of trial and punishment, then, which is changed by this law, and not the punishment itself affixed to the crime which is changed.
The punishment prescribed by law to the crime of horse stealing, where that crime has been committed by a free negro, is imprisonment in the penitentiary house. How shall he be hereafter tried and punished for that offence ? He shall not be tried by a jury in the circuit court, nor punished by that court, but he shall be tried and punished by the justices of oyer and terminer in the same manner as slaves are now tried and punished. The circuit court can have no jurisdiction to try and punish him for that offence, because death is not the punishment annexed by law to that crime. The justices of the county court, sitting as a court of oyer and terminer, are expressly invested by this statute, with the jurisdiction to try, convict and punish him.
The construction which we give to this provision, is strengthened by the language of the 10th section of the *656 same statute; by which receivers from slaves &c. of stolen goods, knowing them to be stolen, shall be adjudged guilty of larceny, and punished in the same manner, and to the same extent,” as if the receiver were the thief. The legislature has here drawn the distinction between the manner, and the extent, of punishment. The inference is, that in another case, where it has changed the manner of the punishment, and said nothing about the extent of it, it did not mean to change the punishment itself.
The question has been asked, whether the county courts of oyer and terminer are empowered by this statute, to send free negroes and mulattoes to the penitentiary ? It is argued, that they never before had that power, in any case, since that kind of punishment has never been inflicted on slaves; and this statute only gives to the county courts summoned for the trial of free negroes, all the powers and incidents of a court summoned for the trial of a slave: and it is contended, that as they never had the power to send a slave to the penitentiary, so now they have not the power to send a free negro to the penitentiary. We do not admit the correctness of this conclusion. The powers of the county courts of oyer and terminer, are to compel the attendance of witnesses, to hear the evidence, to hear counsel, to expound the law, to decide both on the law and fact, to decide whether the person accused before them, be guilty or not of the felony charged upon him. If they find him not guilty, they are to acquit and discharge him. If they find him guilty, they are to punish him ; that is, not to act the ministerial part of inflicting punishment, but to pronounce the sentence of the law: they are to pronounce and declare the punishment, whatever it may be, which the law affixes to that crime, and to make the proper orders for carrying' that sentence into execution. Does the law say, that the slave shall be hanged ? The justices,are to pronounce that sentence, and fix the day for the execution, and that judgement and order shall be the -warrant to the sheriff for his execution. Does the law declare, that the slave shall be *657 burnt in tbe hand, or receive stripes ? The justices render the judgement, and give the order for carrying the judgement into effect. The present law, after giving to the county courts of oyer and terminer, the power to try and punish free negroes and mulattoes, for any felony, declares farther, that they shall have and exercise all the powers and incidents of a court summoned for the trial of slaves. They shall have power, if they find them not guilty, to acquit ; if they convict them, to pronounce the punishment, whatever it may be (except death), which the law affixes to the crime, and then to make the proper orders for carrying that sentence into execution. If the law declares, that the free negro shall be punished by stripes, or by imprisonment in the county jail, or by imprisonment in the public jail and penitentiary house, this statute authorizes them, in the one case as well as the other, to render the judgement, and make the proper order to the sheriff to inflict the stripes, to convey him to the county jail, or to convey him to the public jail and penitentiary house.
In the case before the court, the circuit superiour court of Shenandoah, had no jurisdiction to try the prisoner. We have, therefore, no hesitation in advising and directing that court to arrest the judgement, and set aside the verdict which has been rendered, and to order the prisoner to be carried before a justice of the peace for the county of Shenandoah, who may proceed with his case de novo, and deal with him according to law.
In this opinion, judges Parker, Upshur, May, Lomax and Duncan concurred. Judges Thompson and Brown dissented.
Thompson, J. held, that by the 11th section of tbe statute of March 1832, it was intended to subject free negroes, for all offences, to the same punishment as slaves, and to the same trial before county courts of oyer and terminer, in all cases, except in cases of homicide and in cases where the punishment shall be death; by which he *658 understood, cases in which the free negro is punishable by death according to this statute of March 1832. In the excepted cases of homicide and other capital offences, the statute intended to give, and has given, the free negro, the benefit of a trial before the circuit superiour court;
The judgement of the court was entered as follows : “ This court is of opinion, and doth decide, that the circuit superiour court for the county of Shenandoah had no jurisdiction to try the said Weldon for the crime of horse stealing with which he was charged j the said crime, when committed by a free negro or mulatto, not being punishable by death, but by imprisonment in the public jail and penitentiary house; and that for the said crime, he could only be tried by the justices of oyer and terminer for the said county. And the court is, therefore, of opinion, and doth decide, that the judgement in the said case shall be arrested, the verdict set aside, and the prisoner be ordered by the said court to be carried before some justice of the peace in and for the said county, to be dealt with according to law. Which is ordered to be certified &c.”
II. Marks’s case, adjourned from the circuit superiour court of Augusta, was twice before this court. He was a free negro, indicted and tried, in the circuit superiour court, at November term 1832. The indictment, as it appeared in the transcript of the record sent to this court on the first adjournment of the case, charged, that the prisoner, on the 2nd October 1832, did feloniously and burglariously break and enter into the dwelling house of &sc. and did feloniously steal, take and carry away therefrom, sundry articles of property to the value of thirty dollars: but the indictment did not charge, that the offence was committed in the night time, or that any person was in the house at the time, and put in fear. The prisoner being found guilty by the verdict of the jury, the court doubting what judgement it could or ought to give, with the consent of the prisoner, adjourned the following questions to this court:
*659 1. Does the exception as to homicide and other cases punishable with death, in the 11th section of the statute of the 15th March 1832, take homicide and other such felonies, out of the influence of the preceding part of the section, as well in relation to punishment as mode of trial?
2. If only as to the mode of trial, what felonies are meant by the words of the exception in the statute, “ in case where the punishment shall be death ?” Do they mean such felonies as were punishable with death in the case of a slave, or such as were punishable with death in the case of a free negro or mulatto, according to the law as it stood before the passing of this statute ?
3. Can the court render any judgement upon the verdict ? and if any, what judgement ?
At December term 1832, Leigh, J. delivered the resolution of the court: The difficult questions adjourned in this case, arise out of the exception contained in the statute of March 1832. In this court, another question has presented itself, namely, whether the circuit superiour courts have jurisdiction in any case of felony committed by a free negro or mulatto ? Upon all these questions, there has been a difference of opinion among the judges; and we cannot refrain from suggesting, that many difficulties might be removed by an explanatory statute, pointing out in what courts the felonies mentioned in the exception shall be tried, the mode of trial, and the punishment. But in the present case, it is not necessary to give any opinion upon some of the questions adjourned.
Whatever doubt and difficulty there may be, as to the class of felonies mentioned in the exception contained in the section in question, there can be none as to other felonies. By the letter of the first member of the section, free negroes and mulattoes are to be prosecuted, tried, convicted and punished, in the same manner as slaves. We are of opinion, that the felony charged in the present indictment does not come within the exception; that is, that it is not a homicide or other felony punishable with death, whether *660 committed by a slave or freeman. The offence charged is not a burglary, from which the benefit of clergy is taken away, if committed by a slave. In burglary, the offence must be committed in the night time. But this is not charged in the present case. It is, indeed, charged that the offence was burglariously committed, but this is not sufficient. In every indictment for burglary, we hold that it must distinctly and plainly appear, that the offence was committed in the night time; which certainly does not appear here. In short, the offence charged is simply the breaking a dwelling house, no person being therein at the time and put in fear, and taking goods therefrom; from which of-fence we have not been able to find, that the benefit of clergy has been taken away. We are, therefore, of opinion, that the offence charged in the indictment comes not within the exception, and that the circuit superiour court of Augusta had no jurisdiction thereof.
This court is of opinion, and doth certify to the circuit superiour court, that no judgement can be rendered by that court on the verdict in this present case, as the said court had no jurisdiction. And this renders it unnecessary to answer the other questions adjourned.
But on this judgement being certified to the circuit superiour court, it was found, on examination of the original indictment, that it charged, that the prisoner, did " on the 2nd October 1832, between the hours of twelve and four in the night of that day, feloniously and burglariously, break and enter the dwelling house of &e. and certain articles of property then and there found, of the value of thirty dollars, did feloniously steal, take and carry away therefrom. Thus, the indictment charged a burglary, in the most technical form; a crime for which, before the statute of the 15th March 1832, a slave was punishable with death without benefit of clergy, and a free negro or mulatto with imprisonment in the penitentiary. Whereupon, the circuit superiour court again adjourned the case to this court, for its opinions *661 on the same questions, on which it was first adjourned, sending to this court, now, a corrected transcript of the record.
And, at this term, Brockenbrough, J. delivered the resolution of the court: That the circuit superiour court for the county of Augusta had no jurisdiction to try Marks for the crime of burglary with which he was charged; that crime, when committed by a free negro or mulatto, not being punishable by death, but by imprisonment in the public jail and penitentiary house; and that for such crime he could only be tried by the justices of oyer and terminer for the said county: and, therefore, that judgement in the case should be arrested, the verdict set aside, and the prisoner ordered by the court, to be carried before some justice of the peace in and for the said county, to be dealt with according to law.
III. Sunkefs case was adjourned to this court from the circuit superiour court of Accomack. He was a free negro, indicted of grand larceny, in that court, and tried at May term 1833. The indictment charged, that he had been, once before, in 1829, indicted for the like crime of grand larceny, in the then circuit court of Accomack, tried, convicted and sentenced to be punished with stripes and six months imprisonment in the common jail of the county. It appeared, on the trial of this indictment, that the punishment to which he had been sentenced for the first offence, had been inflicted upon him. And upon this indictment for the second crime of grand larceny, he was found guilty by the verdict of the jury. Whereupon, the circuit superiour court adjourned to this court, the question, whether any, and if any, what judgement should be given in the case ?
Brockenbrough, J. delivered the resolution of the court: That the circuit superiour court for the county of Accomack had no jurisdiction to try the said Sunket for the offence of grand larceny with which he was charged; that offence, when committed by a free negro or mulatto, not being punishable by death, but by imprisonment in the public jail *662 and penitentiary, where the money, bank note, goods, chattels, or other thing stolen, is of greater value than twenty dollars: and that for such offence he could only be tried by J J the justices of oyer and terminer for the county: and, there-: fore, that the judgement in the case should be arrested, the verdict set aside, and the prisoner ordered by the court, to be carried before some justice of the peace in and for the said county, to be dealt with according to law.
IV. Thompson, a free negro, was indicted in the circuit superiour court of Frederick, for violently and feloniously making an assault upon, and attempting to ravish, a white woman; a crime, which when committed by a slave, free negro or mulatto, is made punishable by death, by the statute of 1822-3, ch. 34. § 3. He was found guilty by the jury, and the court passed sentence of death upon him.
And now, he presented a petition to this court, praying a writ of error to the judgement, upon the ground, that, by the 11th section of the statute of the 15th March 1832, he could only be tried for this crime, by the justices of oyer and terminer in the county court; that, according to that provision of the statute, he ought to have been tried by a jury, in the county court; and that the circuit superiour court had no jurisdiction of the case.
Bb.ockenbb.ough, J. delivered the resolution of the court: That, as the petitioner Thompson, a free negro, has been convicted of the felony of making an assault upon, and attempting to ravish, a white woman, and as that crime, when committed by a free negro or mulatto, is punishable with death, the circuit superiour court for the county of Frederick, had jurisdiction to try the petitioner, and that .there is no error in the judgement.
Writ of error denied.